**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ST. JAMES-COLUMBUS MEDREALTY, LLC, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA,<br><br>Defendant. | No. 25cv16754 (EP) (JBC)<br><br>**MEMORANDUM ORDER** |

**PADIN, District Judge.**

Plaintiffs St. James-Columbus Medrealty, LLC and Columbus Medical Building Holdings, LLC (together, "Columbus") own a medical building in Newark, New Jersey, whose emergency generator failed on July 10, 2019. D.E. 1-3 ("Amended Complaint" or "Am. Compl.") ¶¶ 3, 9, 11. Defendant American Casualty Company of Reading, Pennsylvania ("American Casualty") insured the building under a policy that required any suit on a property claim to be brought "within 3 years after the date on which the loss or damage occurred." D.E. 14-5 (the "Policy") at 18.[1] Columbus reported the generator failure to American Casualty on November 9, 2022—over three years later—and American Casualty denied the claim. Am. Compl. ¶¶ 11, 18, 26.

In March 2025, Columbus sued American Casualty over the claim denial in the Superior Court of New Jersey, Law Division, County of Essex,[2] bringing five counts: breach of contract

[1] Because the Policy consists of various compiled documents without consecutive internal page numbers, the Court cites the ECF-generated page numbers at the top of each page of the Policy.

[2] The Amended Complaint also named CNA Financial Corporation, an affiliate of American Casualty, as a defendant. Am. Compl. ¶ 4. By stipulation filed October 20, 2025, Columbus agreed to dismiss CNA from the litigation. Removal Notice ¶ 5 & Ex. C. CNA is therefore no longer a

(Count One); violation of N.J. Stat. Ann. § 11:2-17 (Count Two); violation of the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. § 56:8-1 *et seq.* (Count Three); unfair insurance practices under N.J. Stat. Ann. § 17:29B-4 (Count Four); and breach of the implied covenant of good faith and fair dealing (Count Five). Am. Compl. ¶¶ 44–60. On October 20, 2025, American Casualty removed the case to this Court. D.E. 1 ("Removal Notice").

American Casualty now moves to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). D.E. 14 ("Motion" or "Mot.").[3] The Motion centers on one question: whether the Policy's three-year suit limitation provision bars this action. It does. New Jersey enforces reasonable contractual limitation periods in insurance policies. Here, that period runs from the date of the generator failure and expired on July 10, 2022—four months before Columbus reported the loss, and nearly three years before it sued American Casualty. Columbus's counterarguments—that the relevant provision in the Policy is ambiguous, that its reasonable expectations override the Provision, and that its claim did not start the clock until denial—fail as a matter of law. For the reasons explained below, the Court will **DISMISS** the Amended Complaint ***with prejudice***.

---

party. The Amended Complaint at points attributes the claim handling and denial to "CNA," *see, e.g.*, Am. Compl. ¶¶ 11, 18, 26. The Court reads those allegations as directed toward American Casualty, the insurer that issued the Policy.

[3] Columbus opposes the Motion. D.E. 17 ("Opposition" or "Opp'n"). American Casualty replies. D.E. 18 ("Reply"). The Court decides the Motion without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b).

# I. BACKGROUND[4]

## A. Factual Background

Columbus owns property at 495 North 13th Street in Newark, New Jersey (the "Property"). The Property includes an emergency generator that powers a hospital campus operated by Columbus's tenant, Silver Lake Hospital ("Silver Lake"). Am. Compl. ¶¶ 9, 12. Silver Lake treats an "older patient population that is largely immune-compromised, and [was] susceptible to severe outcomes from COVID-19." *Id.* ¶ 12.

Columbus insured the Property—including the generator serving Silver Lake—through the Policy, Number 6043538792, issued by American Casualty. *Id.* ¶¶ 8, 10; Policy at 1. The Policy covered the period from October 31, 2018, to October 31, 2019. Am. Compl. ¶ 10; Policy at 1. The Policy is a commercial package policy whose coverage parts include business property coverage. Policy at 11.

The Policy's Common Terms and Conditions include a suit limitation provision (the "Provision"):

> XIV. NO SUIT AGAINST INSURER
>
> A. No suit shall be brought under this Policy by anyone other than the **Named Insured**. The **Named Insured** may not bring any such suit, action or legal proceeding unless, as a condition precedent, there shall have been full compliance with all the provisions of this Policy and:
>
> 1. with respect to any property **coverage part**, the action is brought within 3 years after the date on which the loss or damage occurred or, with respect to any crime coverage, the date the loss was **discovered** . . . .

*Id.* at 18 (emphasis in original).

---

[4] The facts in this section are taken from allegations in the Amended Complaint, which the Court presumes true for purposes of the Motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**B. Claim-Related Allegations**

On July 10, 2019, the generator failed during a regularly scheduled test. Am. Compl. ¶¶ 11, 20. Columbus's service provider identified the failure at the time and attributed it to city water in the engine coolant and oiling systems. *Id.* ¶¶ 15, 20. Columbus repaired and replaced the generator at its own expense. *Id.* ¶ 31. Columbus did not submit a claim to American Casualty until November 9, 2022—three years and four months after the generator failure. *Id.* ¶¶ 12–13, 26. The claim alleged that Columbus acted "as soon as reasonably practical" because Silver Lake was overwhelmed by the COVID-19 pandemic. Opp'n at 2; *see* Am. Compl. ¶¶ 12–13, 26. American Casualty accepted the claim in January 2024 and assigned it a claim number and an adjuster. Am. Compl. ¶¶ 26, 28–29; Opp'n at 2. On March 12, 2024, American Casualty denied the claim by letter invoking the Policy's exclusions for rust, corrosion, and wear and tear. Am. Compl. ¶¶ 11, 18; D.E. 14-4 ("Denial Letter").

**C. Procedural Background**

Columbus filed this suit on March 21, 2025, in the Superior Court of New Jersey, Law Division, County of Essex. Removal Notice ¶ 1. American Casualty removed the action on October 20, 2025, invoking this Court's diversity jurisdiction. *See id.* American Casualty's Motion is fully briefed, and the parties agree that New Jersey law governs the substance of this dispute. *See Navigators Specialty Ins. Co. v. Citizens Ins. Co. of Am.*, 739 F. Supp. 3d 259, 263 (D.N.J. 2024) (citation omitted) ("Where parties' briefs assume that a particular forum's law controls, such implied consent . . . is sufficient to establish choice of law.").

**II. LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court accepts all well-pleaded factual allegations as true, construes the complaint in the plaintiff's favor, and determines

"whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Courts may not consider "[f]actual claims and assertions raised by a defendant." *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022).

To survive a Rule 12(b)(6) challenge, a plaintiff's claims must be facially plausible, meaning "the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Although there is no "probability requirement," a plaintiff's claims must do more than present "a sheer possibility that a defendant has acted unlawfully." *Id.* The allegations must include "more than labels and conclusions." *Twombly*, 550 U.S. at 555.

A limitations defense—statutory or contractual—is an affirmative defense that a plaintiff need not plead around. *Schmidt v. Skolas*, 770 F.3d 241, 248 (3d Cir. 2014) ("[A] complaint need not anticipate or overcome affirmative defenses; thus, a complaint does not fail to state a claim simply because it omits facts that would defeat a statute of limitations defense."); *see* Fed. R. Civ. P. 8(c)(1). A limitations defense, however, may be raised by motion "if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002) (citations omitted); *see Schmidt*, 770 F.3d at 249. Conversely, if the bar is "not apparent on the face of the complaint, then it may not afford the basis for dismissal." *Robinson*, 313 F.3d at 135.

In deciding the Motion, the Court may "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer*, 605 F.3d at 230. The face of the complaint includes documents "integral to or explicitly relied upon in the complaint," which the Court may consider without converting the motion into one for summary judgment. *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999).

## III. DISCUSSION

This action is untimely. The Policy gave Columbus three years from the date of the loss to sue, yet Columbus sued nearly six years later. The Motion's position is straightforward: the Provision's three-year period ran from the July 10, 2019, generator failure and expired on July 10, 2022—months before Columbus reported the claim, and years before it sued. Mot. at 1, 3–4. Columbus responds with three arguments: (1) the Provision's phrase "loss or damage" is ambiguous and must be construed against American Casualty as its drafter, Opp'n at 4–5; (2) enforcing the Provision as written would defeat Columbus's reasonable expectation of coverage, Opp'n at 5–6; and (3) under New Jersey's discovery rule, its cause of action did not accrue—and the three-year clock did not start—until American Casualty denied the claim on March 12, 2024, making its March 21, 2025, filing timely, Opp'n at 6–9.

The Court agrees with American Casualty. Nothing in the Provision's language, Columbus's expectations, or New Jersey's discovery rule extends the Provision's deadline. The Provision therefore bars Counts One, Three, and Five, and Counts Two and Four fail for the independent reason that neither asserted provision creates a private right of action.

**A. The Action Is Untimely**

Limitations periods serve to "compel the exercise of a right of action within a reasonable time so that the opposing party has a fair opportunity to defend." *Hous. Auth. of Union City v. Commonwealth Tr. Co.*, 25 N.J. 330, 335 (1957). Contracting parties may shorten New Jersey's six-year statutory limitations period. *Eagle Fire Prot. Corp. v. First Indem. of Am. Ins. Co.*, 145 N.J. 345, 354 (1996). A contract shortening the statutory period "is valid if the stipulated period is reasonable and does not violate public policy." *A.J. Tenwood Assocs. v. Orange Senior Citizens Hous. Co.*, 200 N.J. Super. 515, 523–24 (App. Div. 1985). New Jersey courts have long applied this rule to enforce suit limitation clauses in property policies—including one-year clauses shorter than the Provision's three-year period. *See, e.g., Azze v. Hanover Ins. Co.*, 336 N.J. Super. 630, 636–37 (App. Div. 2001).

The Provision required Columbus to sue "within 3 years after the date on which the *loss* or *damage* occurred." Policy at 18 (emphasis added). The loss (generator failure) occurred on July 10, 2019. Am. Compl. ¶¶ 11, 20. The three-year period therefore expired on July 10, 2022. Columbus filed suit on March 21, 2025—two years and eight months late. Removal Notice ¶ 1.

Moreover, New Jersey law provides an equitable safeguard for insureds who report a claim and await the insurer's coverage decision. *See Bartley v. Travelers*, No. 19-15322, 2020 WL 1987251, at *3 (D.N.J. Apr. 27, 2020) ("A limitations period may be tolled from the time the insured gives notice of loss until the time that the insurance company formally denies coverage." (citation modified)). Tolling ensures the insured "is not penalized for the time consumed by the company" in adjusting the claim. *Peloso v. Hartford Fire Ins. Co.*, 56 N.J. 514, 520–21 (1970); *Nat'l Newark & Essex Bank v. Am. Ins. Co.*, 76 N.J. 64, 78–80 (1978) (discussing a contractual suit limitation provision in deciding an action's timeliness). Columbus does not dispute that the

Provision's three-year period is reasonable or that such provisions are generally enforceable; its arguments are instead that the period never lapsed. *See generally* Opp'n.

But tolling suspends a running clock—it does not restart an expired one. Columbus gave American Casualty notice on November 9, 2022—four months *after* the three-year period had expired. Am. Compl. ¶ 26. In fact, Columbus waited until March 2025 to sue, over a year *after* American Casualty's denial. Thus, Columbus's suit is time-barred unless one of its counterarguments succeeds. None does.

**B. The Policy Is Not Ambiguous**

Columbus argues that the phrase "the date on which the loss or damage occurred" is ambiguous because the words "or damage" might refer to something other than the date of the loss. Opp'n at 4–5; *see* Policy at 18. According to Columbus, it was "damaged" by the denial of the claim, and the Policy would not have included "or damage" if "the Policy intended that the limitations provision runs only from the date of loss." Opp'n at 4–6.

The Court is unpersuaded by this argument. A policy is enforced as written when its terms are clear, and an ambiguity exists only where the language fairly supports more than one reasonable interpretation. *See Flomerfelt v. Cardiello*, 202 N.J. 432, 441 (2010). A policy "is not ambiguous merely because two conflicting interpretations of it are suggested by the litigants," and absent a genuine ambiguity a court may not "engage in a strained construction to support the imposition of liability" or "write a better policy for the insured than the one purchased." *Oxford Realty Grp. Cedar v. Travelers Excess & Surplus Lines Co.*, 229 N.J. 196, 207–08 (2017) (citations omitted).

The term "loss or damage" recurs throughout the Policy, describing physical injury to covered property. *See, e.g.*, Am. Compl. ¶ 22 (quoting the Policy's promise to pay expenses for

"temporary repair of damage to covered property"). Read in context, the "date on which the loss or damage occurred" means the date of the physical casualty. *See Passaic Valley Sewerage Comm'rs v. St. Paul Fire & Marine Ins. Co.*, 206 N.J. 596, 607–09 (2011) (rejecting the insured's contention that the policy's use of "loss" and "money damages" was ambiguous, and cautioning that the rule of construction favoring insureds cannot be used to "mak[e] a plain agreement ambiguous and then constru[e] it in favor of the insured"). Here, the generator failed, and Columbus's service provider identified the cause on the same day. Am. Compl. ¶¶ 11, 20. The damage therefore occurred on the date of the generator failure.

The Provision's own language counters Columbus's ambiguity argument. The Provision sets two different starting points for two different coverages: a property action must be brought within three years of "the date on which the loss or damage occurred," while a crime action runs from "the date the loss was discovered." Policy at 18. The Policy's drafters thus distinguished between *occurrence* and *discovery* in the very clause at issue—and chose occurrence for property claims like this one. When the Provision keys a limitations period to discovery, it says so. *See Kief Farmers Coop. Elevator Co. v. Farmland Mut. Ins. Co.*, 534 N.W.2d 28, 35–36 (N.D. 1995) (treating the presence of discovery language in the policy's crime coverage and its absence from the property coverage as evidence that the drafter "knew how to linguistically limit coverage" to discovered losses).

Columbus's reading would collapse the Policy's distinction between occurrence and discovery. Treating "damage" as the economic injury inflicted by a later coverage denial confuses the discovery-style trigger the drafters reserved for crime coverage and applies it to the property coverage. Moreover, that reading would sever "damage" from its consistent use throughout the Policy to describe physical injury to covered property. *See generally* Policy. That is a strained

construction—not a reasonable one. *See Oxford Realty*, 229 N.J. at 207 (declining to find ambiguity where the insured's competing reading "present[ed] a conflicting interpretation suggested by litigants rather than a genuine ambiguity," and reiterating that courts "will not manufacture an ambiguity where none exists").

Columbus argues that *contra proferentem*—which construes genuine ambiguities against the insurer—applies here. Opp'n at 5. But that doctrine does not apply where, as here, the Provision is unambiguous. *See Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am.*, 195 N.J. 231, 238 (2008). Because the Provision is unambiguous, the Court need not construe it against American Casualty.

**C. The Reasonable Expectations Doctrine Does Not Apply**

Columbus next invokes the reasonable expectations doctrine, arguing it reasonably expected the Policy to cover the generator claim. Opp'n at 5–6. That argument fails for two reasons.

*First*, Columbus identifies no ambiguity, hidden pitfall, or misleading presentation that would permit the Court to depart from the Provision's language. *See Zacarias v. Allstate Ins. Co.*, 168 N.J. 590, 595 (2001) (explaining that the reasonable expectations doctrine governs "[w]hen there is ambiguity in an insurance contract," but "[i]n the absence of any ambiguity, courts should not write for the insured a better policy of insurance than the one purchased" (citation omitted)). Where there is more than one reasonable reading of a policy, courts adopt the interpretation consistent with the insured's objectively reasonable expectations. *Flomerfelt*, 202 N.J. at 441. The doctrine, however, is "less applicable to commercial contracts" like the Policy here. *Oxford Realty*, 229 N.J. at 208. The Provision is direct and appears in the Policy's Common Terms and

Conditions. Policy at 18. Because the Provision is not ambiguous, there is no interpretive gap to fill.

*Second*, Columbus asserts the doctrine's application to the wrong provision. Columbus alleges it expected *coverage* for the generator failure, Am. Compl. ¶¶ 23–24, but the Motion turns on the expiration of a suit limitation clause. An expectation that a loss is covered says nothing about how long the insured has to sue. And Columbus identifies no reasonable expectation—or cases supporting such an expectation—that it could wait nearly six years after a known equipment failure to bring suit.

**D. The Accrual-at-Denial and Discovery Rule Theories Both Fail**

Lastly, Columbus argues that its causes of action did not accrue until the claim was denied on March 12, 2024, because under New Jersey's discovery rule the "damage" to Columbus occurred when the claim was denied. Opp'n at 6–9. Under that view, Columbus's March 21, 2025, filing was within the required three-year period.

*Peloso* forecloses that theory. There, the New Jersey Supreme Court surveyed competing approaches to suit limitation clauses and held that the period runs from the date of the casualty, tolled from notice until formal denial. *Peloso*, 56 N.J. at 518–21. Fatally for Columbus, *Peloso* expressly declined to adopt the view that a suit limitation period "begins to run from the time the cause of action accrues." *Id.* at 519–20. In other words, the clock does not start on the date of denial—even though the denial is ordinarily the act that gives an insured the right to sue in the first place. *Crest-Foam Corp. v. Aetna Ins. Co.*, 320 N.J. Super. 509, 523 (App. Div. 1999) (holding that an insurer "cannot contend that the cause of action accrued before it wrote its letter denying coverage"). Moreover, adopting Columbus's rule would leave the contractual limitation open-ended, since a denial cannot precede a claim and the insured alone decides when to make one—precisely what happened here. *See Green v. Selective Ins. Co. of Am.*, 144 N.J. 344, 353–54 (1996)

(rejecting accrual on the carrier's denial and measuring the six-year period from the date of the accident instead, because the alternative would let disputes run "eight or more years").[5]

The discovery rule does not rescue Columbus either. That rule is an equitable one that delays accrual of a *tort* claim while the victim remains reasonably unaware of the injury or its cause. *Lopez v. Swyer*, 62 N.J. 267, 272–74 (1973) (describing the discovery rule as "equitable in nature" and available to a plaintiff who is "unaware that he has sustained an injury"). The discovery rule "generally has not been applied" to contract actions because "most contract actions presume that the parties to a contract know the terms of their agreement and a breach is generally obvious and detectable with any reasonable diligence." *Cnty. of Morris v. Fauver*, 153 N.J. 80, 110 (1998); *accord Trinity Church v. Lawson-Bell*, 394 N.J. Super. 159, 171–72 (App. Div. 2007) (observing that a contractual accrual clause whose "clear purpose" is "to abrogate the discovery rule" would likely be valid under New Jersey law). Thus, the discovery rule would not apply here.

* * *

Columbus advances no other basis for avoiding the Provision. Although the Amended Complaint alleges waiver and estoppel, Am. Compl. ¶ 61, and attributes the delay in reporting to the COVID-19 pandemic, *id.* ¶¶ 12–13, 26, the Opposition presses neither as a ground for tolling. The Court does not reach arguments a party has not made. *See United States v. Sineneng-Smith*,

---

[5] Columbus cites *Zirger v. Gen. Accident Ins. Co.*, 144 N.J. 327, 333 (1996), for the proposition that "a cause of action does not accrue until the carrier breaches the contract, for example, by denying the benefits." Opp'n at 8.

*Zirger* does not hold that. It decided whether an underinsured motorist carrier that had notice and an opportunity to intervene in the underlying tort action may nonetheless compel arbitration of the damages already fixed by the jury. Columbus's quoted language comes instead from Justice Pollock's concurrence in *Green*, 144 N.J. at 357 (Pollock, J., concurring), which described *Zirger* while parting ways with the *Green* majority on accrual. And the *Green* majority rejected the very rule Columbus presses here. *See id.* at 353–54.

590 U.S. 371, 375–76 (2020) ("[I]n both civil and criminal cases, in the first instance and on appeal . . . we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present."); *N.U. ex rel. M.U. v. Mansfield Twp. Sch. Dist.*, No. 19-14894, 2022 WL 18024205, at *1 n.1 (D.N.J. Dec. 30, 2022) ("The Court will not, however, address issues which have not been properly briefed.").

### E. All Five Counts Are Dismissed with Prejudice

The Provision bars any "suit, action or legal proceeding" brought under the Policy after the three-year period. Policy at 18. All five counts arise from the adjustment and denial of the generator claim and seek the Policy's benefits and relief. Am. Compl. ¶¶ 44–60. The Court addresses each count because dismissal with prejudice is appropriate only where amendment would be futile—that is, where "the complaint, as amended, would fail to state a claim upon which relief could be granted." *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002).

*Counts One and Five.* Count One pleads breach of the Policy; Count Five pleads breach of the implied covenant of good faith and fair dealing. Am. Compl. ¶¶ 44–46, 59–60. Both are suits on the Policy and untimely. A bad faith claim against an insurer "sounds in contract" and rises and falls with the insured's contractual right to benefits. *See Pickett v. Lloyd's*, 131 N.J. 457, 470 (1993). The time bar defeats Columbus's right to payment, and with it the predicate for a breach of good faith and fair dealing.

*Count Three.* The NJCFA claim fails for two reasons. *First,* it is untimely. Neither the NJCFA nor the general statute of limitations bars parties from contracting for a shorter period, as the parties did here by agreeing to the Provision's three-year limitations period. *See Mirra v. Holland Am. Line*, 331 N.J. Super. 86, 90–92 (App. Div. 2000) (enforcing a shortened contractual limitations period against consumer fraud and contract claims because neither the general limitations statute nor the NJCFA "specifically bar[s] parties from contracting to a shorter time

period"). *Second*, the NJCFA does not reach the conduct alleged. The NJCFA covers the marketing and sale of insurance; it "was not intended as a vehicle to recover damages for an insurance company's refusal to pay benefits." *Myska v. N.J. Mfrs. Ins. Co.*, 440 N.J. Super. 458, 485–86 (App. Div. 2015) (quoting *Lemelledo v. Beneficial Mgmt. Corp. of Am.*, 150 N.J. 255, 265 (1997)).

*Counts Two and Four.* Both are untimely (not brought within the Provision's three-year period), and both assert claims no private litigant may bring. Count Four invokes N.J. Stat. Ann. § 17:29B-4, and Count Two invokes the unfair claims settlement regulations promulgated under that Act, N.J.A.C. 11:2-17. Am. Compl. ¶¶ 47–48, 55–58. Neither creates a private right of action. *Pickett*, 131 N.J. at 468 ("[T]he [N.J. Stat. Ann. § 17:29B-4] regulatory framework does not create a private cause of action[.]"); *see Alpizar-Fallas v. Favero*, No. 17-2768, 2017 WL 3816541, at *2 (D.N.J. Aug. 31, 2017) (dismissing a claim pleaded under N.J.A.C. 11:2-17 because those regulations afford policyholders no private right of action).

Dismissal is *with prejudice*. For Counts One, Three, and Five, the defect is timeliness—the dates that bar this action come from Columbus's own allegations, and no amendment can alter them. Count Three also fails because the NJCFA, as a matter of law, does not reach an insurer's denial of a claim under a policy it issued. For Counts Two and Four, no amendment could supply a private right of action, so they too fail as a matter of law. Because "amendment would be futile," *In re NAHC*, 306 F.3d at 1332, the Court will **DISMISS** all counts of the Amended Complaint ***with prejudice***.

## IV. CONCLUSION & ORDER

For the foregoing reasons,

**IT IS**, on this 19th day of August, 2026,

**ORDERED** that American Casualty's Motion to Dismiss, D.E. 14, is **GRANTED**; and it is further

**ORDERED** that the Amended Complaint, D.E. 1-3, is **DISMISSED *with prejudice***; and it is finally

**ORDERED** that the Clerk of Court shall **CLOSE** this case.

Evelyn Padin, U.S.D.J.